**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON**

**BRITTANY MCHENRY, AS
ADMINISTRATRIX OF THE ESTATE
OF RALPH O'DELL BOWLING,**

    **Plaintiff,**

vs.                                              **CIVIL ACTION NO. 2:25-cv-00367
HONORABLE _____**

**ACE TRANSPORT MIAMI LLC, a Florida
limited liability company, ACE GROUP
HOLDINGS CORP., a Florida corporation,
RODOLFO A. ALVAREZ, and GARCIA
ORTEGA YULIER,**

    **Defendants.**

## COMPLAINT

Now Comes the Plaintiff, Brittany McHenry, Administratrix of the Estate of Ralph O'Dell Bowling, and hereby states the following for her Complaint:

1. This action is brought on behalf of the Estate of Ralph O'Dell Bowling, a deceased person, pursuant to *West Virginia Code* §§ 55-7-5, 55-7-6, 55-7-8, 55-7-8a and the holding in *McDavid v. United States,* 213 W.Va. 592, 584 S.E.2d 226 (2003).

2. Ralph O'Dell Bowling (hereinafter "Mr. Bowling") died on February 26, 2025, and at that time, was a resident of Putnam County, West Virginia.

3. Brittany McHenry is a resident of Putnam County, West Virginia, and was appointed Administratrix of the Estate of Ralph O'Dell Bowling by the Putnam County Commission on March 28, 2025. A copy of the Letter of Administration is attached as Exhibit A.

4. Defendant Ace Transport Miami LLC ("ACE TRANSPORT") is, upon information and belief, a Florida limited liability company that has a principal office address of 8362 Pines Blvd., Ste 288, Pembroke Pines, Florida 33024.

5. ACE TRANSPORT is an interstate motor carrier registered with the U.S. Department of Transportation under U.S.D.O.T. No. 1994375.

6. Defendant Ace Group Holdings Corp. ("ACE GROUP") is, upon information and belief, a Florida corporation that has a principal office address of 8362 Pines Blvd., Ste 288, Pembroke Pines, Florida 33024.

7. Defendant Rodolfo A. Alvarez ("ALVAREZ") is a resident of the State of Florida.

8. At all times relevant to the allegations in this Complaint, Alvarez was an owner and manager of ACE TRANSPORT.

9. At all times relevant to the allegations in this Complaint, Alvarez was an owner and manager of ACE GROUP.

10. Defendant Garcia Ortega Yulier ("YULIER") is a resident of the State of Florida.

11. At all times relevant to the allegations in this Complaint, YULIER was acting as an agent, servant, and/or employee ACE TRANSPORT and/or ACE GROUP.

12. Pursuant to 28 *U.S.C.* § 1332, this Court has jurisdiction over the parties and claims asserted in this action as the parties are citizens of different states and the amount in controversy exceeds $75,000.00.

13. Pursuant to 28 *U.S.C.* § 1391, the United States District Court for the Southern District of West Virginia, Charleston Division, is an appropriate venue for this action as the crash that forms the basis for this civil action arose in Jackson County, West Virginia.

14. The Defendants are subject to the jurisdiction and venue of this Court.

## GENERAL FACTS

15. On February 26, 2025, Mr. Bowling was an operator of a 2009 Dodge 2500 pickup truck with a trailer hauling a horse and was traveling southbound on Interstate 77 in or near Ravenswood, Jackson County, West Virginia.

16. At that same time and place, YULIER was operating a 2016 Hino 268 straight truck (the "ACE Truck") and was traveling northbound on Interstate 77.

17. YULIER was transporting the ACE Truck from Miami, Florida, to ACE TRANSPORT's New Albany, Ohio, location.

18. Driving from Miami, Florida, to New Albany, Ohio requires driving more than 1,100 miles.

19. Completing the drive from Miami, Florida, to New Albany, Ohio requires more than seventeen (17) hours.

20. Upon approaching a right curve in the road on Interstate 77 in West Virginia, YULIER failed to remain in his lane of travel.

21. YULIER proceeded to drive straight and failed to negotiate the right curve, causing him to exit the northbound lanes of Interstate 77.

22. At no time before leaving the northbound lanes of Interstate 77 did YULIER attempt to brake.

23. The northbound and southbound lanes of Interstate 77 in the area referenced above are separated by a cable barrier.

24. After proceeding into the median, YULIER drove the ACE Truck through the cable barrier, crossed the median and entered into Mr. Bowling's lane of travel.

25. YULIER and the ACE Truck struck Mr. Bowling and his vehicle in a head-on collision.

26. Immediately after the collision, the ACE Truck continued through Interstate 77's southbound lanes and struck an embankment, causing the truck to overturn.

27. The collision occurred at approximately 4:20 p.m. on February 26, 2025.

28. Immediately after the collision, Mr. Bowling was conscious and entrapped in his vehicle.

29. Mr. Bowling's vehicle sustained significant damage to the extent he could not exit the vehicle.

30. Mr. Bowling was trapped in his vehicle for approximately 30 minutes before he was extricated and flown to the hospital.

31. Mr. Bowling was pronounced dead at 6:10 p.m. on February 26, 2025.

32. Between when the collision occurred and his death, Mr. Bowling experienced extreme conscious pain and suffering.

33. Mr. Bowling suffered fatal injuries as a direct and proximate result of the crash described above and YULIER's (I) negligent and reckless conduct and/or (ii) conscious and outrageous indifference to the health, safety and welfare of others.

34. At the time of the collision, YULIER was issued a Class E Temporary Driver's License by the State of Florida.

35. As set forth below, the ACE Truck was a commercial motor vehicle ("CMV") and therefore YULIER and his operation of the ACE Truck were subject to certain federal regulations, including those contained within Title 49 *C.F.R.* § 391.

36. After the collision, the Jackson County Sheriff's Office arrived at the scene of the collision and investigating Officer C.L. Roush attempted to communicate with YULIER.

37. YULIER, by his words and actions, indicated he did not speak or understand English, as required by 49 *C.F.R.* § 391.11.

38. At all times relevant after the collision, YULIER did not speak English sufficiently to respond to law enforcement inquiries, as required by 49 *C.F.R.* § 391.11.

39. At all times relevant after the collision, YULIER did not read nor speak English sufficiently to make entries on reports and records to assist law enforcement in investigating the collision, as required by 49 *C.F.R.* § 391.11.

40. At all times relevant after the collision, YULIER's inability to speak or understand English impeded law enforcement's investigation of the subject collision.

41. The Jackson County Sheriff's Office found YULIER caused the subject collision.

42. The Jackson County Sheriff's Office found YULIER was operating the ACE Truck in an inattentive, careless, and improper manner and that he failed to maintain control of the ACE Truck.

43. YULIER's negligent actions and/or inactions and/or his conscious, reckless and outrageous indifference to the health, safety and welfare of others, caused Mr. Bowling's injuries and death.

44. Because the ACE Truck was a CMV, the West Virginia Public Service Commission ("WVPSC") also investigated the subject collision.

45. The WVPSC officer investigating the subject collision contacted and spoke with ALVAREZ, who identified himself as the owner of ACE GROUP and referred to ACE TRANSPORT as "his" company.

46. ALVAREZ advised the investigating WVPSC officer that, at the time of the subject collision, the ACE Truck was en route from Florida to ACE TRANSPORT'S New Albany, Ohio location.

47. ALVAREZ further advised the investigating WVPSC officer that he had loaded certain cargo in the ACE Truck to be transported with the ACE Truck to ACE TRANSPORT's New Albany, Ohio location.

48. ALVAREZ advised the WVPSC investigating officer that ACE TRANSPORT and/or ACE Group did not yet own the ACE Truck.

49. The information ALVAREZ provided to the WVPSC investigating officer as to the ownership of the ACE Truck was inconsistent with documents regarding ownership, registration, and insurance.

50. The ACE Truck was acquired by ACE GROUP on or about February 20, 2025.

51. At or around the same time, and prior to the subject collision, Defendants ACE GROUP, ACE TRANSPORT, and/or ALVAREZ caused ACE TRANSPORT's fictitious business name, "Ace Solutions," and its logo to be placed on the ACE Truck in Florida, as shown below:

 

52. On or about February 21, 2025, Defendants ACE GROUP, ACE TRANSPORT, and/or ALVAREZ caused the State of Florida to issue a certificate of title, vehicle registration, and Florida license plate for the ACE Truck.

53. At or around the same time, and prior to the subject collision, Defendants ACE GROUP, ACE TRANSPORT, and/or ALVAREZ caused the ACE Truck to be added to ACE TRANSPORT's auto liability policy.

54. Defendants ACE GROUP, ACE TRANSPORT, and ALVAREZ entrusted the ACE Truck to YULIER for purposes of driving the ACE Truck from Miami, Florida to ACE TRANSPORT's New Albany, Ohio location.

55. Defendants ACE GROUP, ACE TRANSPORT, and ALVAREZ placed the ACE Truck in the stream of commerce and knew that YULIER's task would require him to drive through multiple states, including West Virginia, in order to reach ACE's New Albany, Ohio location.

56. At the time of the crash, YULIER was a permissive operator / user of the ACE Truck.

57. ACE TRANSPORT, ACE GROUP, and their manager, ALVAREZ, failed to qualify YULIER before entrusting the ACE Truck to him and allowing him to operate it.

58. Upon information and belief, ACE TRANSPORT, ACE GROUP, and their manager, ALVAREZ, failed to assure that YULIER was capable of safely operating the ACE Truck prior to allowing him to do so.

59. Upon information and belief, ACE TRANSPORT, ACE GROUP, and their manager, ALVAREZ, did not administer YULIER a road test before permitting him to operate or otherwise drive the ACE Truck.

60. Upon information and belief, ACE TRANSPORT, ACE GROUP, and their manager, ALVAREZ, did not have a designated person administer YULIER a road test before permitting him to operate or otherwise drive the ACE Truck.

61. Additionally, ACE TRANSPORT, ACE GROUP, and their manager, ALVAREZ, failed to require YULIER to adhere to the hours of service requirements and limitations while driving the ACE Truck.

62. The ACE Truck did not have an electronic logging device and YULIER did not prepare or maintain logs to document his hours of service.

63. Upon information and belief, YULIER violated the hours of service requirements regulating his operation of the ACE Truck.

64. The subject collision and Mr. Bowling's injuries and death were directly and proximately caused by ACE GROUP, ACE TRANSPORT, ALVAREZ and YULIER's negligent actions and/or inactions described above and/or their conscious, reckless and outrageous indifference to the health, safety and welfare of others, including Mr. Bowling.

65. Mr. Bowling did not cause or contribute to the collision.

### COUNT I - NEGLIGENCE AND *PRIMA FACIE* NEGLIGENCE OF GARCIA ORTEGA YULIER

66. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if each were fully set forth in their entirety.

67. At all relevant times, YULIER owed certain duties to members of the public, including Mr. Bowling.

68. YULIER breached the duties owed to the public and Mr. Bowling by:

   a. Failing to operate the ACE Truck in accordance with generally accepted safety principles and practices;

   b. Failing to abide by the basic rules of the road;

   c. Failing to operate the ACE Truck in a safe and prudent manner;

   d. Failing to keep the ACE Truck under control;

   e. Driving the ACE Truck inattentively, carelessly, and/or improperly;

   f. Driving the ACE Truck in reckless disregard for the safety of others;

   g. Failing to stay in his designated lane of traffic;

      h.      Driving the ACE Truck over, across, or within the dividing space, barrier, or section of two roadways; and

      I.      Failing to use that degree of care and caution that a reasonable and prudent driver would have exercised under the same or similar circumstances.

69.    YULIER's conduct and breach of the above-described duties was negligent and proximately caused Mr. Bowling's fatal injuries.

70.    Additionally, at the time of the crash, YULIER was operating a CMV, as defined in 49 *C.F.R.* § 390.5, in interstate commerce and was subject to the Federal Motor Carrier Safety Regulations.

71.    YULIER was also, at the time of the crash, subject to the laws of the State of West Virginia governing the operation of interstate CMVs on West Virginia's public roadways.

72.    YULIER was *prima facie* negligent in that he violated Federal Motor Carrier Safety Regulations and various rules of the road as incorporated into the laws and regulations of West Virginia.

73.    Pursuant to 49 *C.F.R.* § 391.11, YULIER was required to be qualified before driving a CMV.

74.    YULIER violated the requirements of 49 *C.F.R.* § 391.11 by driving the ACE Truck before being qualified to drive a CMV.

75.    Pursuant to 49 *C.F.R.* § 395, YULIER was required to document and maintain records evidencing his hours of service.

76.    YULIER violated the requirements of 49 *C.F.R.* § 395 by failing to document and maintain records evidencing his hours of service for the trip leading up to the subject collision.

77. Chapter 49, Part 392.2 of the Code of Federal Regulations provides, in pertinent part: "[e]very commercial motor vehicle must be operated in accordance with the laws, ordinances, and regulations of the jurisdiction in which it is being operated."

78. Pursuant to *West Virginia Code* §§ 17C-5-1, 17C-5-3, 17C-6-1, 17C-7-1, 17C-7-9, and 17C-7-11, YULIER was statutorily required to: not drive a vehicle with willful or wanton disregard for the safety of other persons; control his speed as necessary to avoid colliding with any other vehicle on the highway; drive upon the right half of the roadway; drive entirely within a single lane when the roadway has been divided into two lanes; and, not drive over, across, or within the dividing space, barrier, or section between two roadways.

79. Defendant YULIER violated the requirements of *West Virginia Code* §§ 17C-5-1, 17C-5-3, 17C-6-1, 17C-7-1, 17C-7-9, and 17C-7-11 by: operating his vehicle in an erratic and careless manner; operating the vehicle he was driving with a willful, wanton and/or reckless disregard for the safety of others, including Mr. Bowling; not controlling his speed as necessary to avoid colliding with any other vehicle on the highway, including Mr. Bowling's vehicle; not driving upon the right half of the roadway; driving outside his lane of travel; and, driving over, across, or within the dividing space, barrier, or section.

80. YULIER's violations of the law proximately caused the collision and fatal injuries to Mr. Bowling as described above.

### COUNT II - ACE TRANSPORT'S AND/OR ACE GROUP'S LIABILITY FOR THE NEGLIGENCE OF YULIER

81. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if each were fully set forth in their entirety.

82. At the time of the crash, YULIER was acting within the course and scope of his employment or agency with ACE TRANSPORT and/or ACE GROUP.

83. At the time of the crash, YULIER was furthering the business interests of ACE TRANSPORT and/or ACE GROUP.

84. Under the principles of *respondeat superior*, actual agency and apparent agency, ACE TRANSPORT and/or ACE GROUP are vicariously liable and legally responsible for the negligent acts and omissions of YULIER.

85. ACE TRANSPORT and/or ACE GROUP are vicariously liable to Plaintiff for all damages allowed by law and as set forth herein.

86. As a direct and proximate result of ACE TRANSPORT's, ACE GROUP's, and YULIER's negligent, careless and reckless conduct and the incident described above, Mr. Bowling suffered severe pain and catastrophic injuries resulting in his death.

**COUNT III – ACE TRANSPORT'S, ACE GROUP'S, AND ALVAREZ'S CONDUCT**
**(Negligent Entrustment, Hiring, Training, and Supervision)**

87. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if each were fully set forth in their entirety.

88. ACE TRANSPORT, ACE GROUP and ALVAREZ were negligent by: failing to properly train and supervise YULIER in connection with his operation of a CMV; failing to assure that YULIER's retention and operation of the ACE Truck complied with all applicable laws and regulations; and/or for otherwise failing to act as a reasonable and prudent employer, motor carrier, manager and/or owner would under the same or similar circumstances.

89. ACE TRANSPORT, ACE GROUP and ALVAREZ are also independently liable for entrusting the operation of the ACE Truck to YULIER, as such entrustment

was negligent and/or evidenced a conscious, reckless and outrageous indifference to the health, safety and welfare of others, including Mr. Bowling.

90. The actions and inactions of ACE TRANSPORT, ACE GROUP and ALVAREZ directly and proximately caused Mr. Bowling to suffer severe pain and catastrophic injuries resulting in his death.

91. ACE TRANSPORT, ACE GROUP and ALVAREZ are liable to Plaintiff for all damages recoverable by law for the injuries, death and losses sustained by the Estate of Ralph Bowling as a result of the negligence of YULIER and/or their own independent negligence.

**WHEREFORE**, Brittany McHenry, Administratrix of the Estate of Ralph O'Dell Bowling, hereby requests that judgment be entered against Defendants ACE Transport Miami LLC, ACE Group Holdings Corp., Rodolfo A. Alvarez, and Garcia Ortega Yulier to include the following:

- (a) all compensatory damages recoverable under *West Virginia Code* §§ 55-7-6 and 55-7-8;

- (b) damages for the decedent's conscious pain and suffering endured between the time of injury and the time of death;

- (c) compensation for sorrow, mental anguish and solace suffered by the distributees of Ralph O'Dell Bowling;

- (d) compensation for the loss of society, companionship, comfort, guidance, kindly offices, and advice of Ralph O'Dell Bowling suffered by his distributees;

- (e) compensation for the loss of services, protection, care, and assistance of Ralph O'Dell Bowling suffered by his distributees;

- (f) compensation for Ralph O'Dell Bowling's funeral, ambulance, and medical expenses;

- (g) punitive damages as warranted by the facts and law;

    (h)    pre-judgment interest and post-judgment interest as allowed by law; and

    (I)    such other damages as allowed by law.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

        **BRITTANY MCHENRY, AS ADMINISTRATRIX OF THE ESTATE RALPH O'DELL BOWLING,**

        **Plaintiff**

        **By Counsel:**

/s/ ROBERT A. CAMPBELL
**ROBERT A. CAMPBELL (WVSB No. 6052)**
 *Email: racampbell@fcclaw.net*
**R. CHAD DUFFIELD (WVSB No. 9583)**
 *Email: rcduffield@fcclaw.net*
**CHRISTIAN A. HUFFMAN (WVSB No. 14205)**
 *Email: cahuffman@fcclaw.net*
**FARMER, CLINE & CAMPBELL, PLLC**
746 Myrtle Road (25314)
Post Office Box 3842
Charleston, West Virginia 25338
Telephone: 304-346-5990   Facsimile: 304-346-5980

    ***COUNSEL FOR THE PLAINTIFF***